IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**CLOSED CIVIL CASE**

Case No. 06-10072-CIV-MOORE/GARBER

TIMOTHY KING,

    Plaintiff,

vs.

THE SCHOOL BOARD OF MONROE
COUNTY, FLORIDA,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE TO DISMISS THE COMPLAINT (DE #8)

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment or in the Alternative to Dismiss the Complaint (DE #8). Plaintiff filed a Response (DE #12) and Defendant filed a Reply (DE #14).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

Plaintiff TIMOTHY KING ("Plaintiff" or "King") was hired by Defendant THE SCHOOL BOARD OF MONROE COUNTY, FLORIDA ("Defendant" or "School Board") on or about August 1, 2005, to work in the computer lab. Compl. ¶ 12. Per School Board policy, Plaintiff's first six (6) months of employment were a probationary period during which he could be terminated at any time with or without cause. Def. Mot. Summ. J., Ex. B. Two employees of Defendant submitted affidavits that they heard Plaintiff use profanity "on several occasions" and in the "presence of students and employees." Id., Ex. E & F. On or about December 15, 2005, both of these employees also heard Plaintiff specifically use variations of the word "fuck" in the computer lab while students were present. Id. Due to Plaintiff's use of profanity, the Principal of Coral Shores High School (where Plaintiff was employed), Ron Martin, recommended to the

Superintendent that Plaintiff (as a probationary employee), be discharged from employment. Id., Ex. G. Randy Acevedo, Superintendent of Schools for the School Board, concurred with Principal Martin's recommendation that Plaintiff be terminated on December 16, 2005. Id., Ex. H.

Plaintiff claims to be an individual with disabilities as defined by 42 U.S.C. § 12102(2) due to his chronic and severe back pain. Compl. ¶ 11. Plaintiff's position as a Computer Laboratory Aide[1] had an official job description that included the relevant Americans with Disabilities Act ("ADA") [42 U.S.C. § 12102 et seq.] requirements.[2] Id., Ex. A. Plaintiff completed a Computer Information Sheet that had a space next to the word "Handicapped?" where the applicant could list if he was visually, physically, speech, hearing or otherwise handicapped. Id., Ex. I. Plaintiff left the space blank. Id. Further, Plaintiff was required to fill out a Medical History Form. Id., Ex. J. Plaintiff selected "No" on the form when asked if and what type of disability he had. Id. Plaintiff did answer "Yes" in the spaces next to "Any back trouble?" and "Operations?" Id. Plaintiff, in the space provided, explained that he had a "Diskectomy to relieve a bulging disk" and that the date was "April '94". Id. Plaintiff left blank the space next to the question: "Is there any medical information about yourself not covered above which you feel should be brought to the attention of the school board"? Id.

Plaintiff claims that at the beginning of December 2005, he was given additional duties which included the "distribution and handling of thousands of textbooks" and that this "required

---

[1] Throughout Plaintiff's Complaint, he refers to his position as a "Computer Applications Manager," but attaches and refers to the Job Description of a "Computer Laboratory Aide," thus, for ease of reference, the Court will use the title listed on the Job Description. See Compl., Ex. B; see also Def. Mot. Summ. J., Ex. B.

[2] The physical requirements were categorized as "Light Work" and the physical activities listed were: sitting, standing, walking, climbing, bending, stooping, kneeling, crouching, twisting, reaching, pushing, pulling, lifting, finger dexterity, grasping, feeling, repetitive motions, talking, hearing acuity, and visual acuity. Def. Mot. Summ. J., Ex. A. Further, the job description called for both indoor and outdoor work. Id.

extreme physical exertion that the Plaintiff was not able to complete due to his disability." Compl. ¶ 13. Plaintiff states that he asked for reasonable accommodations in the form of lifting assistance and was refused by Principal Martin and Vice Principals Blake Fry and David Murphy, and was then terminated without cause. Id. Plaintiff claims that the additional task regarding the distribution and handling of thousands of textbooks was not included in the job description nor discussed at the time of hiring and that Plaintiff was qualified with or without reasonable accommodations. Id. ¶¶ 16-17.

Plaintiff states that he has exhausted his administrative remedies by seeking relief with the United States Equal Employment Opportunity Commission and, subsequently, receiving a Dismissal and Notice of Rights on March 31, 2006. Id. ¶ 4; id., Ex. A. Plaintiff timely filed this Complaint for Injunctive Relief seeking the Court's determination of whether Defendant violated Plaintiff's rights under either the ADA, 42 U.S.C. § 12102 et seq. (Count I) or the Florida Educational Equity Act ("FEEA"), Fla. Stat. Ann. § 1000.05 (Count II)[3], and for the Court to order Defendant to reinstate Plaintiff as an employee.

## II. ANALYSIS

### A. Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of

---

[3] Plaintiff's claim under the Florida Educational Equity Act is labeled as Count I, but the Court infers that Plaintiff means for it to be a separate count under which he could be granted relief. See Compl. at 4.

meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. Anderson, 477 U.S. at 254. Summary judgment may be granted if the nonmovant fails to adduce evidence which, when viewed in a light most favorable to him, would support a jury finding in his favor. Id. at 254-55.

Additionally, the nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

4

immaterial and requires the court to grant the motion for summary judgment. Id.

## B. Plaintiff's ADA Claim (Count I)

Plaintiff claims that his employment was terminated due to an alleged disability. The McDonnell Douglas test is applied to disability discrimination claims. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case of discrimination, Plaintiff must show that he: (1) is disabled; (2) was a qualified individual who could perform the essential functions of the position, with or without reasonable accommodation; and (3) was discriminated against because of his disability. Terrell v. USAir, 132 F.3d 621, 624 (11th Cir. 1998). Further, Plaintiff must show that the employer had actual or constructive knowledge of the disability. Gordon v. E.L. Hamm & Assocs., Inc., 100 F.3d 907, 910 (11th Cir. 1996). If a prima facie case is established, the burden shifts to the School Board to provide legitimate, nondiscriminatory reasons for terminating Defendant. Should the School Board set forth permissible reasons for its decision, Plaintiff is left with the burden of proving that those are not the actual reasons that motivated the School Board's decision.

Here, construing all factual inferences in favor of Plaintiff and viewing all the evidence in the light most favorable to him, Plaintiff cannot sustain a claim of discrimination under the ADA. Plaintiff alleges that his back surgery and chronic back pain render him disabled. The U.S. Supreme Court, in Bragdon v. Abbott, 524 U.S. 624 (1998), set forth a three-step analysis for disability determination:

> First, plaintiffs must be impaired. Next, the court must identify the life activity that the plaintiff claims has been limited and determine whether it is a major life activity under the ADA. The regulations interpreting the Rehabilitation Act of 1973 define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii). If not contained within these exemplars, the activity must be "significant" to everyday life. Bragdon, 524 U.S. at 638 . . . . Finally, the court must determine whether the impairment "substantially limits" that life activity. The EEOC defines this phrase to mean "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1).

5

Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004) (footnote omitted) (construing Bragdon, 524 U.S. at 638). Construing the facts and evidence in the light most favorable to Plaintiff, it is possible that his back injury impairs him. The life activities that King claims are limited are "performing manual tasks and working." Pl. Resp. to Def. Mot. for Summ. J. at 2-3. Further, Plaintiff claims that he is unable to "lift heavy objects, nor perform work that requires significant bending." Id. at 3.

The Court must now determine whether Plaintiff's impairment "substantially limits" the "major life activities" of "performing manual tasks" and "working." Rossbach, 371 F.3d at 1357; see also Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221-22 (11th Cir. 2000). As the Eleventh Circuit stated in Chanda:

> The regulations define "substantially limits" as rendering an individual "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." The regulations also discuss three factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

234 F.3d at 1222 (citations omitted).

The crucial issue here, again, is whether Plaintiff's back injury limits the major life activity of performing manual tasks and working. Plaintiff seems to assert that the manual tasks he cannot perform are lifting heavy objects or work that requires significant bending and lifting. Compl. ¶¶ 11, 22. Plaintiff has offered only his own affidavit to support this contention. No evidence from his surgeon, his treating physician(s), hospital records or other documentation was proffered. Further, Plaintiff's signed Computer Information Sheet and Medical History Form directly contradict his contention. See Def. Mot. Summ. J., Exs. I & J. This contradiction, coupled with Plaintiff's failure to demonstrate that he is "substantially limited in a range of manual tasks rather than a narrow category," means that Plaintiff cannot sustain a claim of

limitation of ability to perform manual tasks. Chanda, 234 F.3d at 1223 (emphasis added).

Similarly, Plaintiff's claim that his impairment substantially limits the major life activity of working is legally insufficient. Even construing the facts and viewing the evidence in the light most favorable to Plaintiff, he fails to demonstrate how his impairment affects his ability to work. Plaintiff points the Court to the recent case of D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1227 (11th Cir. 2005). There, the Eleventh Circuit stated that "'[w]hen the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.'" Id. (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491)). Plaintiff confuses the legal standard and its application. The standard in the federal regulations (29 C.F.R. § 1630.2) and the binding case law are not intended to apply to the alleged specific activity that Plaintiff was asked to perform, but to demonstrate the burden that Plaintiff must carry, namely, that Plaintiff's impairment substantially limits his ability to work not only in a single, particular job, but a broad range of jobs in various classes. 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added). Plaintiff alleges merely that "the Amended Complaint[4] states, or at the very least infers, that the Plaintiff was unable to work in a broad class of jobs for the School Board due to his disability." Pl. Resp. at 3 (citing Compl. ¶ 11). Plaintiff's bare assertion that he "was unable to walk for a two year period of time and is subsequently unable to, neither [sic] lift heavy objects, nor perform work that requires significant bending and lifting" is insufficient. Compl. ¶ 11. First, Plaintiff's past (undocumented) medical condition does not, by itself, prove present disability, impairment or substantial limitation. Second, the inability to lift heavy objects is not a substantial restriction on the ability to work. See, e.g., Rossbach, 371 F.3d at 1358-59. Third, the claim of inability to

---

[4] In Plaintiff's Response to Defendant's Motion for Summary Judgment or in the Alternative Motion to Dismiss (DE #12), Plaintiff continually refers to the "Amended Complaint," however, as a review of the record attests, the Complaint (DE #1) is the only operative complaint in this case. The Court will therefore deem references to an "Amended Complaint" merely as scrivener's errors.

"perform work that requires significant bending and lifting" is insufficiently vague and "[w]ere the Court to accept this . . . reasoning, no physical or mental impairment would fall outside the scope of the ADA." Swain v. Hillsborough Co. School Bd., 146 F.3d 855, 858 (11th Cir. 1998). Plaintiff offers no evidence of his inability to perform a broad range of jobs either utilizing or not utilizing similar training, knowledge, skills or abilities within his geographical area, and his only concrete description of his impairment is confined to the task of "distribut[ing] and handl[ing] thousands of textbooks." Pl. Resp. at 13 ¶ 9. Thus, Plaintiff has failed to demonstrate that he is unable to perform a broad range of jobs in various classes.

Next, Plaintiff fails to demonstrate that he has a record of such an impairment. See 42 U.S.C. § 12102(2)(B); see also Swain, 146 F.3d at 857. Plaintiff's Computer Information Sheet and Medical History Form clearly demonstrate that Plaintiff did not list a significant impairment or disability. Def. Mot. Summ. J., Ex. I & J. In fact, in two separate instances, Plaintiff had the opportunity to document any impairment or disability that required accommodations and did not. Id.

Finally, Plaintiff cannot legally sustain a claim that the School Board regarded him as disabled. 42 U.S.C. § 12102(2)(C); see also Rossbach, 371 F.3d at 1359; Swain, 146 F.3d at 857. As stated in Rossbach:

> A plaintiff is "regarded as" being disabled if he meets one of three conditions: (1) he has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has no physical or mental impairment but is treated by an employer as having such an impairment. 29 C.F.R. 1614.203(a)(5). Our Court has held that, for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is "substantially limiting" and significant. Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999).

371 F.3d at 1359. The only evidence that Plaintiff presents that the School Board regarded him as disabled is that the job description for the position states that the physical activity would be limited to light work and that his Medical History Form indicated back trouble.

8

Pl. Resp. at 3-4. The first contention defies all logic and invites the Court to deem any employer that posts a job description that states "light work" as regarding any applicant as disabled under the ADA. The second contention is critically undermined by the fact that Plaintiff affirmatively stated on the same Medical History Form that he was not disabled and declined to state any additional relevant medical information. Def. Mot. Summ. J., Ex. J. Further, the above analysis regarding Plaintiff's alleged "substantial limitations" informs the Court's analysis under Rossbach, 371 F.3d at 1359 and Sutton, 185 F.3d at 1209. For the reasons stated above, the Court finds that Plaintiff's alleged perceived disability does not involve a major life activity and that the alleged perceived disability is not substantially limiting or significant. Thus, even viewing all factual inferences and all evidence presented in the light most favorable to Plaintiff, no genuine issue of material fact exists as to whether Plaintiff is disabled under the ADA.

Finally, even if Plaintiff were disabled under the ADA, it is not possible for Plaintiff to overcome the School Board's legitimate, nondiscriminatory reasons for his termination, and Plaintiff therefore cannot legally sustain a claim of discrimination under the ADA. In Plaintiff's Response to Defendant's Motion for Summary Judgment (DE #12), Plaintiff attached the Affidavit of Timothy King [the Plaintiff]. While the Affidavit addresses the issue of whether Plaintiff was disabled, it does not and cannot rebut the School Board's proffered reason for his termination; Plaintiff used profanity in the presence of students. See Pl. Resp. to Def. Mot. Summ. J. at 13. Further, Plaintiff has failed to address Defendant's assertion that Plaintiff was a probationary employee and, per official School Board policy, could be terminated for any reason during the probationary period.

It is important to note that "it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially [or prejudicially] motivated." Alexander v. Fulton Co., Ga., 207 F.3d 1303, 1341 (11th Cir. 2000). Further, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business

judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Plaintiff can attempt to rebut the proffered nondiscriminatory reason by proving that the rationale is merely a pretext for an underlying discriminatory motive. See, e.g., Ren v. Univ. of Cent. Fla. Bd. of Trustees, 390 F. Supp. 2d 1223, 1232 (M.D. Fla. 2005). Here, as stated above, Plaintiff has failed to rebut the proffered reason and has not proved that it was merely pretextual.

In light of Plaintiff's admitted usage of profanity in contravention of the School Board's Employee Handbook (Def. Mot. Summ. J., Ex. C at k.), Plaintiff's status as a probationary employee, and Plaintiff's inability to rebut the School Board's proffered reason for his termination, the Court finds that Plaintiff cannot sustain a claim for discrimination under the ADA as a matter of law. Even viewing all factual inferences and the evidence in the light most favorable to Plaintiff, no genuine issue of material fact exists as to Plaintiff's usage of profanity as Defendant's nondiscriminatory reason for Plaintiff's termination. Finally, Plaintiff has failed to show that Defendant's nondiscriminatory reason was a pretext for an underlying discriminatory reason.

## C. **Plaintiff's Claim Under the FEEA (Count II)**

Plaintiff's claim (Count II) under the FEEA, by Plaintiff's own admission, "mirrors that of his ADA claim." Pl. Resp. to Def. Mot. for Summ. J. at 9. Both federal and state courts in Florida have noted the legal similarities between federal discrimination claims and actions brought under the FEEA. See, e.g., Ren, 390 F. Supp. 2d at 1234-36 (noting that Florida litigants often couple FEEA claims with a Title IX claim); Byrd v. Richardson-Greenshields Sec., Inc., 552 So. 2d 1099, 1103 (Fla. 1989). The parties in this case both admit that the analysis under the FEEA is virtually identical to the ADA analysis. See Def. Mot. Summ. J. at 7; see also Pl. Resp.

at 9. Thus, the Court finds that, for the reasons stated above, the analysis under the FEEA results in the same conclusion as that of the ADA analysis; no genuine issue of material fact exists and Plaintiff cannot legally sustain a claim for disability discrimination under the FEEA.

### III. CONCLUSION

For the reasons stated above, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment or in the Alternative to Dismiss the Complaint (DE #8) is GRANTED IN PART and DENIED AS MOOT IN PART as follows:

1. To the extent Defendant's Motion seeks for the Court to enter Summary Judgment in Defendant's favor, the Motion is GRANTED. Pursuant to Fed. R. Civ. P. 54 & 58, the Court shall enter a separate Order of Final Judgment.

2. To the extent Defendant's Motion seeks for the Court to alternatively Dismiss the Complaint, that part of the Motion is DENIED AS MOOT. It is further

ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case. All other pending motions not yet ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of December, 2006.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:  All counsel of record
     U.S. Magistrate Judge Barry L. Garber